**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

LAMONI K. RIORDAN,                      )
                                        )
          Plaintiff,              )
                                        )
v.                                      )     Case No. 4-02-00296-ODS
                                        )
                                        )
                                        )
CORPORATION OF THE PRESIDING            )
BISHOP OF THE CHURCH OF                 )
JESUS CHRIST OF LATTER-DAY              )
SAINTS,                                 )
                                        )
          Defendant.             )


## <u>SUGGESTIONS IN SUPPORT OF DEFENDANT'S</u><br><u>MOTION FOR SUMMARY JUDGMENT</u>
### [Fed.R.Civ.P. 56; Local Rules 7.1, 56.1]


HUSCH & EPPENBERGER, LLC


By: /s/ Joseph H. Knittig
      Robert B. Best, Jr. #23176
      Joseph H. Knittig, # 45102
      HUSCH & EPPENBERGER, LLC
      1200 Main Street, Suite 1700
      Kansas City, MO  64105
      Telephone:  (816) 421-4800
      Facsimile:  (816) 421-0596

COUNSEL FOR DEFENDANT

# TABLE OF CONTENTS

I.    Introduction ................................................................................................................... 1

II.   Statement of Undisputed Facts ...................................................................................... 2

    A.   Background Facts ..................................................................................................... 2

    B.   Events Before April 13, 1985 .................................................................................. 3

    C.   The Accident – April 13, 1985 ................................................................................ 4

    D.   The Lawsuit ............................................................................................................. 7

III.  Summary Judgment Standards ....................................................................................... 7

IV.   Argument ....................................................................................................................... 8

    A.   Plaintiff's Respondeat Superior Claim is Barred By Parental Immunity ................ 8

    B.   Plaintiff's Defective Mower Claim Fails as a Matter of Law ................................ 10

       1. Plaintiff's Defective Mower Claim Fails Because It Is "Inseparably Linked" to Ken
          Riordan's Negligent Conduct and Is Therefore Barred by Parental Immunity ................ 10

       2. Even If Parental Immunity Did Not Bar Plaintiff's "Direct Negligence" Claim, the Claim
          Fails Because of the Absence of a Causal Link Between the Alleged Shifting Problems
          and Plaintiff's Injury ...................................................................................................... 13

         a. Plaintiff Cannot Establish Causation in Fact ................................................... 13

         b. Plaintiff Cannot Establish Proximate Cause ................................................... 16

V.    Conclusion .................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

Buck v. Union Elec. Co., 887 S.W.2d 430 (Mo. Ct. App. 1994).......................................... 17, 18

Carr v. Carr, 726 S.W.2d 932 (Tenn. Ct. App. 1986) ................................................... 10

Celotex Corp. v. Catrett, 477 U.S. 317, 328, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 365 (1986)..... 7, 8

D.S. Sifers Corp. v. Hallak, 46 S.W.3d 11, 20 (Mo. App. 2001)................................... 16

DLC v. Walsh, 908 S.W.2d 791 (Mo. App. 1995)................................................... 9, 11

Godfrey v. Pulitzer Pub. Co., 276 F.3d 405 (8th Cir. 2002) ..................................... 8, 16

Habib v. Nationsbank, 279 F.3d 563 (8th Cir. 2001)....................................... 7

Hartman v. Hartman, 821 S.W.2d 852 (1991). .............................................. 8

Heffernan v. Reinhold, 73 S.W.3d 659 (Mo. Ct. App. 2002). ........................ 13, 17, 18

Hoover s Dairy, Inc. v. Mid-America Dairymen, Inc./Special Products, Inc., 700 S.W.2d 426

   (Mo. 1985)............................................................................ 13

In re Jessup, 196 F.Supp.2d 914 (E.D. Mo. 2002)........................................ 13

Jackson v. City of Wentzville, 844 S.W.2d 585 (Mo. App. 1993) ............................... 11

Kenney v. Scripps Howard Broadcasting Co., 259 F.3d 922 (8th Cir. 2001)................. 8

McGuckin v. City of St. Louis, 910 S.W.2d 842 (Mo. App. 1995)............................ 9

Peoples v. Conway, 897 S.W.2d 206 (Mo. App. 1995)...................................... 9

Robinson v. Missouri State Highway and Transp. Com'n, 24 S.W.3d 67 (Mo. Ct. Ap. 2000).... 17

State ex rel. Conway v. Dowd, 922 S.W.2d 461 (Mo. App. 1996)............................ 9

Stanley v. City of Independence, 995 S.W.2d 485 (Mo. 1999).................................... 16

State ex rel. City of Fulton v. Hamilton, 941 S.W.2d 785 (Mo. App. 1997)................. 9

State ex rel. Shell Petroleum Corp. v. Hostetter, 156 S.W.2d 673 (Mo. 1941). .......................... 9

Steward v. Goetz, 945 S.W.2d 520 (Mo. Ct. App. 1997) ............................................... 14

Teambank, N.A. v. McClure, 279 F.3d 614 (8th Cir. 2002) ........................................... 8

Williams v. Venture Stores, Inc., 673 S.W.2d 480 (Mo. App. 1984) ............................... 9

**Statutes**

Mo.Rev.Stat. §516.170 ..................................................................................................... 7

## I.   Introduction[1]

CPB is entitled to summary judgment in this personal injury / negligence action because (1) Plaintiff's claims are barred by parental immunity, and (2) Plaintiff has no evidence to prove the causation element of his claims.

CPB controls the physical facilities, including maintenance and custodial services, at the various facilities of The Church of Jesus Christ of Latter Day Saints.  In April of 1985, Ken Riordan worked as a maintenance employee for CPB at a church stake center on Holmes Road in Kansas City, Missouri.  On Saturday, April 13, 1985, Ken Riordan decided to go to work that day, without knowing whether he was supposed to be there and without a supervisor at the facility.  His wife brought Lamoni Riordan, then five years old, to the stake center so Ken, his father, could watch Lamoni while she ran errands.  Ken Riordan did not supervise his son, and allowed him to run around the church grounds.  Although no one from CPB told him to do so, Ken Riordan decided to mow the lawn – with a riding mower that he knew was "hard to shift and hard to stop."  Ken Riordan had to scold his son for playing too close to the mower.  Even after that, Ken Riordan decided to keep mowing without monitoring his son.  Shortly thereafter, while mowing in reverse around a tree, Ken Riordan ran over Lamoni's leg with the mower, severing his foot.

Seventeen years later, Plaintiff Lamoni Riordan has filed this lawsuit arising out of the accident.  He has not and admittedly cannot sue Ken Riordan.  Plaintiff cannot hold Ken Riordan liable for the accident under the law of parental immunity applicable to this case.  In an attempted end-run around this immunity, Plaintiff has sued CPB on two theories.  First, Plaintiff

claims that CPB is liable for his father's negligence under the respondeat superior doctrine. This claim fails because Missouri law does not permit a plaintiff to assert a derivative respondeat superior claim against an employer, when immunity precludes a direct claim against the employee. Second, Plaintiff claims that CPB negligently maintained the mower, making the shifting mechanism hard to operate. This claim fails for two reasons. Because this claim is inseparably linked to Ken Riordan's decisions and actions, Missouri law does not permit Plaintiff to use such a form over substance claim to avert the immunity bar. In addition, Plaintiff has no evidence to prove "but for" causation or proximate cause in his effort to link shifting problems to his injury.

In summary, Plaintiff's claims attempt by artful pleading to avoid a substantive bar at the root of this litigation. Plaintiff has neither factual nor legal support to maintain such claims. As more fully explained below, CPB is entitled to summary judgment under Rule 56.

## II. **Statement of Undisputed Facts**

### A. **Background Facts**

1. CPB controls the physical facilities, including maintenance and custodial services, at the various facilities of The Church of Jesus Christ of Latter Day Saints ("LDS Church"). *Exhibit "A," Petition, at ¶ 3; Exhibit "B," Answer, at ¶ 3.*

2. In 1985, CPB employed Ken Riordan, Plaintiff Lamoni Riordan's father, as a custodian at an LDS Church stake center on Holmes Road in Kansas City, Missouri. *Exhibit "A," Petition, at ¶ 7; Exhibit "B," Answer, at ¶ 7; Exhibit "C," Joint Proposed Scheduling Order / Discovery Plan, at p. 2, Stipulation No. 1.*

---

[1] Throughout this brief, Defendant Corporation for the Presiding Bishop of The Church of Jesus Christ of Latter Day Saints is referred to as "CPB."

3.     At that time, Ken Riordan and his wife, Pearl, had ten children.  Lamoni Riordan, then age five, was one of their children.  *Exhibit "D," Ken Riordan Dep., at p. 56, lines 17-20.*

4.     On Saturday, April 13, 1985, while mowing the lawn at the stake center, Ken Riordan ran over Lamoni Riordan's leg with a riding mower, and cut off part of his foot.  *Exhibit "D," Ken Riordan Dep., at p. 11, lines 1-4.*  This accident is the basis of the instant lawsuit.  Throughout this brief, CPB refers to this event as the "Accident."

**B.     Events Before April 13, 1985**

5.     Ken Riordan used a riding lawnmower to cut the grass at the stake center.  *Exhibit "D," Ken Riordan Dep., at p. 65, lines 2-12.*

6.     CPB owned the mower that Mr. Riordan used to cut the lawn at the stake center.  *Exhibit "C," Joint Proposed Scheduling Order / Discovery Plan, at p. 2, Stipulation No. 1.*

7.     The lawnmower had a gear shifting lever with at least three gears:  forward, neutral, and reverse.  At present, Mr. Riordan is not sure whether the mower had more than one forward gear.  *Exhibit "D," Ken Riordan Dep., at p. 112, lines 5-14.*

8.     According to Mr. Riordan, the mower was "hard to shift, and hard to stop."  *Exhibit "D," Ken Riordan Dep., at p. 110, line 17 – p. 112, line 4.*

9.     Mr. Riordan claims that a "few months" before the Accident, he told his supervisor, Marvin Manthe, that the mower was "hard to shift, and hard to stop."  *Exhibit "D," Ken Riordan Dep., at p. 110, line 14 – p. 111, line 14.*[2]

10.    Mr. Riordan does not know what Mr. Manthe did to maintain the mower.  *Exhibit "D," Ken Riordan Dep., at p. 121, line 24 – p. 122, line 4.*

---

[2]     Mr. Manthe is deceased.

11.     By his own admission, no matter what was done to maintain the mower, Mr.

Riordan knew before the Accident that the mower was "hard to shift and hard to stop."  *Exhibit*

*"D," Ken Riordan Dep., at p. 111, line 17 – p. 112, line 4.*

**C.     The Accident – April 13, 1985**

12.     Pearl Riordan dropped off five-year-old Lamoni at the stake center on April 13,

1985, while Ken Riordan was working.  *Exhibit "D," Ken Riordan Dep., at p. 58, line 22 – p.*

*59, line 4.*

13.     According to Ken Riordan, Lamoni did not have a church activity that day, no day

care was offered at the church, and Pearl Riordan took him to the stake center so she could run

errands.  *Exhibit "D," Ken Riordan Dep., at p. 58, line 22 – p. 59, line 20.*

14.     Ken Riordan knew that Lamoni was at the stake center playing in the church yard.

*Exhibit "D," Ken Riordan Dep., at p. 58, lines 4-6; p. 61, line 22 – p. 62, line 14; p. 15, lines 15-*

*22.*

15.     When asked who was watching Lamoni, Ken Riordan testified as follows:

> Q.     Isn't it true that while Lamoni was out playing in the yard
> before the accident happened, you didn't know who was
> watching him?
>
> A.     Yeah, I guess - - I knew he was there.  And I didn't think
> about who was watching him.  The church was watching
> him, you know.
>
> Q.     Wait a minute.  Who from the church was watching him
> while he was playing on the day of the accident?
>
> A.     I said the church.
>
> Q.     Who?
>
> A.     Nobody in particular.  The church building.  The church.
> You know, I - - that was a detail that wasn't important to
> me.

*Exhibit "D," Ken Riordan Dep., at p. 88, lines 7 – 19.*

16.     No one told Ken Riordan to mow the lawn that day.  In fact, Mr. Riordan

"[didn't] even know if [he] was supposed to work that day."  *Exhibit "D," Ken Riordan Dep., at*

*p. 67, lines 7-12.*

17.     With knowledge that the mower was "hard to shift and hard to stop," that his five-

year-old son was playing in the church yard, and that "[n]obody in particular" was watching his

son, Ken Riordan decided to mow the lawn on April 13, 1985.  *Exhibit "D," Ken Riordan Dep.,*

*at p. 58, lines 4-6; p. 61, line 22 – p. 62, line 14; p. 15, lines 15-22; p. 67, lines 7-12; p. 88, lines*

*7 – 19; p. 111, line 17 – p. 112, line 4.*

18.     Shortly before the accident, Ken Riordan told Lamoni to "Go away," because

Lamoni was playing near where Mr. Riordan was mowing.  Mr. Riordan then continued mowing.

*Exhibit "D," Ken Riordan Dep., at p. 61, line 22 – p. 62, line 14.*

19.     After telling Lamoni to get away from the mower, Mr. Riordan did not know

where Lamoni was in the yard.  *Exhibit "D," Ken Riordan Dep., at p. 87, lines 9-19.*

20.     Ken Riordan mowed in reverse around a tree in the lawn.  The tree was on his

right, and he was looking backward over his left shoulder while doing this.  *Exhibit "D," Ken*

*Riordan Dep., at p. 20, lines 9-24.*

21.     While looking back over his left shoulder Mr. Riordan saw a blur or movement,

but he did not know what it was.  *Exhibit "D," Ken Riordan Dep., at p. 82, lines 12-16.*

22.     Mr. Riordan then turned his head to look over his right shoulder.  *Exhibit "D,"*

*Ken Riordan Dep., at p. 81, line 22 – p. 82, line 11.*

23.     At some point after seeing a blur or movement over his left shoulder, Mr. Riordan tried to shift the gear lever from reverse to forward.  The mower did not shift into forward. *Exhibit "D," Ken Riordan Dep., at p. 45, line 5 – p. 47, line 18; p. 81, line 22 – p. 82, line 11.*

24.     Mr. Riordan does not know if he used a clutch to change gears, or even if the mower had a clutch.  *Exhibit "D," Ken Riordan Dep., at p. 112, line 19 – p. 113, line 9.*

25.     Mr. Riordan does not know if he tried to brake.  *Exhibit "D," Ken Riordan Dep., at p. 46, line 15 – p. 47, line 18.*

26.     In describing when he tried to shift the gear lever, Mr. Riordan testified:  "It all happened real fast.  And, you know - - I think I tried to shift then, before I looked for - - on the other side, but I don't know the exact sequence of events."  *Exhibit "D," Ken Riordan Dep., at p. 82, lines 2-5.*

27.     Mr. Riordan jumped off of and went behind the mower, and Lamoni was on the ground with his feet beneath the deck of the mower.  *Exhibit "D," Ken Riordan Dep., at p. 24, lines 7-20; p. 83, line 16 – p. 84, line 3.*  It was not until then that Mr. Riordan knew that what was behind the mower was Lamoni.  *Exhibit "D," Ken Riordan Dep., at p. 86, line 23 – p. 87, line 3.*

28.     Mr. Riordan did not see the mower run into Lamoni, did not feel the mower bump into Lamoni, and did not hear the mower bump into Lamoni.  *Exhibit "D," Ken Riordan Dep., at p. 84, lines 2-19.*

29.     When asked if Lamoni could have fallen under the mower without being hit by the mower, Mr. Riordan testified, "It's possible."  *Exhibit "D," Ken Riordan Dep., at p. 84, lines 9-11.*

30.     When asked if the lawnmower was on top of Lamoni by the time he turned his head to the right, Mr. Riordan testified: "Maybe it could have been. Because I think that I caught the glimpse of something, I tried to shift, and then went this way (indicating). But I'm not sure." *Exhibit "D," Ken Riordan Dep., at p. 82, lines 6-11.*

31.     Other than some people driving by on the street, whom Ken Riordan cannot identify, there were no other witnesses to the accident. *Exhibit "D," Ken Riordan Dep., at p. 28, line 25 – p. 29, line 8.*

**D.     The Lawsuit**

32.     On February 15, 2002, Lamoni Riordan sued CPB in the Circuit Court of Jackson County, Missouri, and CPB removed his petition to this Court. *Exhibit "A," Petition.*[3]

33.     Lamoni Riordan did not sue his father, Ken Riordan. *Exhibit "A," Petition.*

34.     The parties have stipulated that parental immunity applies to bar any claims against Ken Riordan arising out of the accident. *Exhibit "C," Joint Proposed Scheduling Order / Discovery Plan, at p. 2, Stipulation No. 4.*

## III.     <u>Summary Judgment Standards</u>

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 328, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 365 (1986). Summary judgment is appropriate when the evidence, viewed in the most favorable light to the non-moving party, shows that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. <u>Habib v. Nationsbank</u>, 279 F.3d 563, 566 (8th Cir. 2001). Indeed,

---

[3]     Because Lamoni Riordan was a minor at the time of the Accident, Mo.Rev.Stat. §516.170 tolled the statute of limitations for his cause of action until he reached the age of twenty-one.

Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

Within this overarching framework, two well settled principles are particularly applicable to this case. First, when a claim hinges on a question of law, such as immunity or privilege, summary judgment is "particularly appropriate." Teambank, N.A. v. McClure, 279 F.3d 614, 617 (8th Cir. 2002); Kenney v. Scripps Howard Broadcasting Co., 259 F.3d 922, 924 (8th Cir. 2001). Second, a party cannot rely on conclusory allegations, speculation, or conjecture to avoid summary judgment. Godfrey v. Pulitzer Pub. Co., 276 F.3d 405, 412 (8th Cir. 2002). Applying these standards to the instant case, CPB is entitled to summary judgment.

## IV. Argument

Plaintiff has asserted two different types of negligence claims against CPB. First, Plaintiff contends that his father, Ken Riordan, negligently operated the mower while acting as CPB's agent, therefore, CPB is vicariously liable for Ken Riordan's negligence under the respondeat superior doctrine. *Exhibit "A," Petition, at ¶¶ 11-16.* Second, Plaintiff alleges that CPB negligently maintained the mower, resulting in inadequate braking and shifting mechanisms on the mower, and that such problems caused the accident. *Exhibit "A," Petition, at ¶¶ 17-20.* As explained below, both claims fail as a matter of law.

### A. Plaintiff's Respondeat Superior Claim is Barred By Parental Immunity

Parental immunity is a doctrine which prohibits an unemancipated child from bringing a tort action against one or both of his parents. On December 17, 1991, the Supreme Court of Missouri abrogated the doctrine of parental immunity in Missouri. Hartman v. Hartman, 821 S.W.2d 852 (1991). However, this abrogation applied only to "causes of action that arise after

the date of issuance of this opinion." Id. at 858. Plaintiff's cause of action arose in 1985, and the parties have stipulated that parental immunity applies and bars any claims Plaintiff may have against Ken Riordan arising out of the Accident. *Exhibit "C," Joint Proposed Scheduling Order / Discovery Plan, at p. 2, Stipulation No. 4*. As a matter of law, Ken Riordan's immunity precludes Plaintiff's respondeat superior claim against CPB.

In Missouri, respondeat superior liability of an employer is derivative from the liability of the employer's agent. As the Missouri Supreme Court has stated:

> Under the doctrine of respondeat superior the master's liability is secondary and derivative, the servant's primary, and absent any delict of the master other than through the servant, ***the exoneration of the servant removes the foundation upon which to impute negligence to the master***.

State ex rel. Shell Petroleum Corp. v. Hostetter, 156 S.W.2d 673, 676-77 (Mo. 1941) (emphasis added). Based upon the derivative nature of respondeat superior liability, the immunity of an employee bars a respondeat superior claim against the employer. See, e.g., State ex rel. Conway v. Dowd, 922 S.W.2d 461, 463 (Mo. App. 1996) ("where the claim is premised on the theory of respondeat superior and not on the negligent or intentional acts of the employer, the plaintiff cannot recover against the employer if he does not have grounds for recovery against the employee"); DLC v. Walsh, 908 S.W.2d 791, 800 (Mo. App. 1995) ("because Dr. Walsh is entitled to immunity . . . , her alleged negligence cannot be imputed to [her employer]").[4]

---

[4]    This line of authority in Missouri is clear and extensive. See also, State ex rel. City of Fulton v. Hamilton, 941 S.W.2d 785, 788, 790 (Mo. App. 1997)(holding that servant's immunity precludes respondeat superior claim against principal); McGuckin v. City of St. Louis, 910 S.W.2d 842, 845 (Mo. App. 1995) ("if the defendant-public employee was entitled to official immunity for the acts causing the plaintiff's injury, the plaintiff would have no grounds for recovery . . . against the employer"); Peoples v. Conway, 897 S.W.2d 206, 208 (Mo. App. 1995) (holding that where the negligent police officer is immune from liability, "there is no ground for recovery against his employer"); Williams v. Venture Stores, Inc., 673 S.W.2d 480, 482 (Mo. App. 1984) ("It has long been the law of this State that, when recovery is sought against an employer and an employee on the basis of the employee's wrongful act, exoneration of the employee exonerates the employer.").

Simply stated, Missouri law does not permit plaintiffs to accomplish an end-run around immunity by pleading a respondeat superior claim.

While the facts in this case are not common, the Tennessee Court of Appeals addressed a virtually identical case. In <u>Carr v. Carr</u>, 726 S.W.2d 932 (Tenn. Ct. App. 1986), a father injured his five-year-old daughter while operating a riding mower on-the-job. <u>Id</u>. at 933. The daughter sued her father for negligence, and his employer on a respondeat superior theory. The trial court dismissed the case on parental immunity grounds. <u>Id</u>. In affirming the trial court's ruling, the Tennessee Court of Appeals held that "[s]ince plaintiff is barred from suing her father, she is likewise barred under the facts as alleged in the complaint from suing [the father's employer]." <u>Id</u>.

In the present case, the parties have stipulated that parental immunity bars any claims Lamoni Riordan may have against Ken Riordan arising out of the Accident. Under Missouri law, Ken Riordan's immunity precludes a respondeat superior claim against CPB. CPB is entitled to summary judgment on Lamoni Riordan's respondeat superior claim.

**B. Plaintiff's Defective Mower Claim Fails as a Matter of Law**

Plaintiff's defective mower claim (i.e., that CPB failed to maintain the mower) also fails for two independent reasons: (1) because the claim is inseparably linked to Ken Riordan's negligence, it is barred by parental immunity; and (2) Plaintiff cannot establish the required causal link between the alleged mower problems and the Accident.

**1. Plaintiff's Defective Mower Claim Fails Because It Is "Inseparably Linked" to Ken Riordan's Negligent Conduct and Is Therefore Barred by Parental Immunity**

Just as plaintiffs cannot use respondeat superior to plead around the immunity of an employee, plaintiffs cannot artfully plead "direct negligence" claims to accomplish the same end. Plaintiff claims that CPB did not properly maintain the mower, so the mower was "hard to shift." The problem with this claim is that it, too, hinges on Ken Riordan's decisions and conduct.

A plaintiff cannot maintain a "direct negligence" claim against an employer when the claim is "inseparably linked" to an immune employee's negligent conduct. Walsh, 908 S.W.2d at 800. In Walsh, the plaintiffs claimed that a doctor negligently diagnosed a child as a sexual abuse victim, and reported the alleged abuse to authorities. The plaintiffs brought an action against the doctor for negligent misdiagnosis. The plaintiffs asserted claims against the hospital that employed the doctor for negligent supervision and training of its employee, providing inadequate facilities, and promulgating inadequate protocols for the diagnosis of child abuse. The trial court granted the defendants summary judgment based upon a child abuse reporting statute that provides immunity for anyone making a report of child abuse. On appeal, the Missouri Court of Appeals confirmed that the statute in question provided immunity to the reporting doctor. The Court also affirmed summary judgment for the employer, holding:

> Because Dr. Walsh is entitled to immunity under Kansas's reporting statute, her alleged negligence cannot be imputed to the Hospital. Although appellants attempt to separate their claim against the hospital by alleging that it negligently supervised and trained its employees, provided inadequate facilities, and promulgated inadequate protocols for the diagnosis of child abuse, *those claims are inseparably linked to Dr. Walsh's diagnosis.* Accordingly, the Hospital is entitled to immunity for claims arising from Dr. Walsh's report of suspected child abuse.

Id. at 800 (emphasis added).

While the Walsh court applied Kansas law, the same result attaches applying Missouri law.[5] The underpinning for summary judgment for the employer in Walsh – that a plaintiff cannot circumvent an agent's immunity by suing the employer for the agent's conduct – is the same underpinning for summary judgment in the numerous cases cited above. See Section IV.A., above; see also Jackson v. City of Wentzville, 844 S.W.2d 585, 588-89 (Mo. App. 1993)(affirming dismissal of respondeat superior and negligent entrustment claims against employer where employee immune from liability). Plaintiff's "direct negligence" claim is more

---

[5]    Significantly, the Court of Appeals did not rely on Kansas law for its holding dismissing the direct negligence claims against the employer.

than "inseparably linked" to Ken Riordan's actions; it cannot exist independent of Ken Riordan's actions.

Ken Riordan knew the mower was "hard to shift, and hard to stop." *Exhibit "D," Ken Riordan Dep., at p. 110, line 17; p. 112, line 4.* He knew that his five-year-old son, Lamoni, had been dropped off and was playing in the yard of the Stake Center. *Exhibit "D," Ken Riordan Dep., at p. 58, lines 4-6; p. 61, line 22; p. 62, line 14; p. 15, lines 15-22.* He knew that no one else was watching Lamoni. *Exhibit "D," Ken Riordan Dep., at p. 88, lines 7 - 19.*

No one from CPB asked Ken Riordan to mow the lawn on the day of the Accident, while Ken Riordan allowed his son to run unsupervised through the church yard. In fact, Ken Riordan "[didn't] even know if [he] was supposed to work that day." *Exhibit "D," Ken Riordan Dep., at p. 67, lines 7-12.* Nonetheless, Ken Riordan decided to mow the lawn on April 13, 1985. *Exhibit "D," Ken Riordan Dep., at p. 58, lines 4-6; p. 61, line 22; p. 62, line 14; p. 15, lines 15-22; p. 67, lines 7-12; p. 88, lines 7 - 19; p. 111, line 17; p. 112, line 4.* Shortly before the accident, Ken Riordan told Lamoni to "[g]o away," because Lamoni was playing near where Ken Riordan was mowing. Ken Riordan decided to continue mowing with a mower that was "hard to shift, and hard to stop." *Exhibit "D," Ken Riordan Dep., at p. 61, line 22; p. 62, line 14.*

Plaintiff's claim that CPB negligently failed to maintain the mower is undeniably and inextricably linked to Ken Riordan's decisions. It was Ken Riordan's decision to use a mower that he knew was hard to shift. It was Ken Riordan's decision to mow the lawn on April 13, 1985. It was his decision to mow the lawn while his five-year-old son was playing nearby. It was his decision to continue mowing after his son started playing too near the mower. All of the crucial decisions which culminated in the Accident were made by Plaintiff's father, Ken Riordan.

Because Plaintiff's "direct negligence" claim is "inseparably linked" to Ken Riordan's decisions and conduct, and because Plaintiff cannot base liability upon CPB's alleged failure to

maintain the mower independent of Ken Riordan, Plaintiff's "direct negligence" is also barred by Ken Riordan's immunity.

> **2. Even If Parental Immunity Did Not Bar Plaintiff's "Direct Negligence" Claim, the Claim Fails Because of the Absence of a Causal Link Between the Alleged Shifting Problems and Plaintiff's Injury**

"The elements of negligence are: 1) the existence of a duty; 2) breach of that duty; 3) injury proximately caused by breach of that duty; and 4) actual damages." In re Jessup, 196 F.Supp.2d 914, 918 (E.D. Mo. 2002) (citing Hoover s Dairy, Inc. v. Mid-America Dairymen, Inc./Special Products, Inc., 700 S.W.2d 426, 431 (Mo. 1985). In order to prove the third element – causation – a plaintiff must show both causation in fact and proximate cause. Heffernan v. Reinhold, 73 S.W.3d 659, 664 (Mo. Ct. App. 2002). As a matter of law, Plaintiff cannot prove either component of his causation burden.[6]

> **a. Plaintiff Cannot Establish Causation in Fact**

---

[6] Whether Plaintiff has sufficient evidence to create a fact issue on the second element, breach of duty, is questionable. Through his father's testimony, Plaintiff claims that a "few months" before the Accident, Ken Riordan reported to his supervisor, Marvin Manthe, that the mower was "hard to shift, and hard to stop." *Exhibit "D," Ken Riordan Dep., at p. 110, line 14 – p. 111, line 14.* According to Plaintiff, Mr. Manthe failed to properly maintain the mower. Because Mr. Manthe passed away from cancer several years ago, the parties have no testimony from him about what he did to maintain the mower. The only "evidence" on this point is Ken Riordan's testimony. CPB emphatically denies that the mower was defective. Consistent with this, Ken Riordan admits that immediately after the Accident he told someone investigating the Accident for CPB that there was <u>nothing</u> wrong with the mower. *Exhibit "D," Ken Riordan Dep., at p. 32, line 7 – p. 33, line 11.* Nine years later, Ken Riordan changed his story to claim that the shifting mechanism did not work properly. *Exhibit "D," Ken Riordan Dep., at p. 13, line 17 – p. 23, line 15; p. 39, line 24 – p. 40, line 2.* Given this dramatic change in Mr. Riordan's story, CPB pressed Mr. Riordan in his deposition to explain what information he has as to how Mr. Manthe negligently maintained the mower. Ken Riordan admitted that he does not even know what Mr. Manthe did to maintain the mower. *Exhibit "D," Ken Riordan Dep., at p. 121, line 24 – p. 122, line 4.* Whether Plaintiff could survive summary judgment on the second element of his claim is a close call. However, because the complete dearth of evidence on the causation element provides a clearcut ground for summary judgment, there is no need for the Court to assess the second element.

"A defendant's conduct is the cause in fact of a plaintiff's injuries where the injuries would not have occurred 'but for' that conduct." <u>Steward v. Goetz</u>, 945 S.W.2d 520, 532 (Mo. Ct. App. 1997) ("To prove damages and causation the plaintiff must establish that, 'but for' the attorney's negligence, the result of the underlying proceeding would have been different."). Plaintiff must establish that he would not have been injured "but for" the alleged problems with the mower. The parties are aware of only two witnesses to the Accident, Ken Riordan and Plaintiff. Because Plaintiff was only five years old and Ken Riordan was the only person operating the mower at the time of the Accident, Ken Riordan is the only witness who can speak to the "but for" causation issue. Even granting Plaintiff the most lenient interpretation of the evidence, Ken Riordan's account of the Accident cannot establish causation in fact.

Ken Riordan's testimony about the chain of events that resulted in Plaintiff's injury requires complete speculation on the "but for" causation issue. Ken Riordan states that he was mowing in reverse around a tree. The tree was on his right, and he was looking backward over his left shoulder while doing this. *Exhibit "D," Ken Riordan Dep., at p. 20, lines 9-24.* Ken Riordan describes the seconds involving Plaintiff's injury as follows:

- While looking back over his left shoulder Mr. Riordan saw a blur or movement, but did not know what it was. *Exhibit "D," Ken Riordan Dep., at p. 82, lines 12-16.*

- Mr. Riordan immediately spun his head to look over his right shoulder. *Exhibit "D," Ken Riordan Dep., at p. 81, line 22; p. 82, line 11.*

- Mr. Riordan jumped off of and went behind the mower, and Plaintiff was on the ground with his feet beneath the deck of the mower. *Exhibit "D," Ken Riordan Dep., at p. 24, lines 7-20; p. 83, line 16; p. 84, line 3.* It was not until then that Mr. Riordan knew that the blur he had seen behind the mower was Plaintiff. *Exhibit "D," Ken Riordan Dep., at p. 86, line 23; p. 87, line 3.*

- Mr. Riordan did not see the mower run into Plaintiff, did not feel the mower bump into Plaintiff, and did not hear the mower bump into Plaintiff. *Exhibit "D," Ken Riordan Dep., at p. 84, lines 2-19.*

- At some point during this sequence, Mr. Riordan tried to shift the gear lever from reverse to forward, but the mower purportedly did not shift. *Exhibit "D," Ken Riordan Dep., at p. 45, line 5; p. 47, line 18; p. 81, line 22; p. 82, line 11.* Mr. Riordan does not know if he used the clutch to change gears, or if the mower even had a clutch. *Exhibit "D," Ken Riordan Dep., at p. 112, line 19; p. 113, line 9.* Mr. Riordan does not know if he tried to brake. *Exhibit "D," Ken Riordan Dep., at p. 46, line 15; p. 47, line 18.*

Plaintiff cannot link alleged brake problems to his injury. Ken Riordan does not know if he even tried to brake. *Exhibit "D," Ken Riordan Dep., at p. 46, line 15; p. 47, line 18.* Turning to the shifting mechanism, the critical issue is when Mr. Riordan tried to shift in relation to Plaintiff's injury. In other words, is there a factual basis – not speculation – to show that Plaintiff's injury would not have happened if the mower shifted precisely and perfectly? The answer is "no."

In describing when he tried to shift the gear lever, Mr. Riordan testified: "It all happened real fast. And, you know — I think I tried to shift then, before I looked for — on the other side, ***but I don't know the exact sequence of events***." *Exhibit "D," Ken Riordan Dep., at p. 82, lines 2-5* (emphasis added). When asked if Plaintiff could have fallen under the mower without being hit by the mower, Mr. Riordan testified, ***"It's possible***." *Exhibit "D," Ken Riordan Dep., at p. 84, lines 9-11* (emphasis added). When asked if the mower was on top of Plaintiff by the time he turned his head to the right (i.e., at the time he speculates he might have tried to shift), Mr. Riordan testified: "***Maybe it could have been***. Because I think that I caught the glimpse of something, I tried to shift, and then went this way (indicating). ***But I'm not sure***." *Exhibit "D," Ken Riordan Dep., at p. 82, lines 6-11* (emphasis added).

Assuming for the sake of argument that the shifting mechanism was problematic and that CPB had breached a duty to Plaintiff by failing to repair that mechanism, there is no evidence that a shifting problem caused Plaintiff's injury. Based on Ken Riordan's testimony, a jury must speculate to determine when Mr. Riordan tried to shift. A jury must speculate as to what steps it

took to properly shift the mower (e.g., must you actually use a clutch?), and how long that would have taken. A jury must speculate as to whether Plaintiff's injury occurred before or after the shifting attempt. A jury must speculate as to how and why Plaintiff ended up under the mower. A jury must speculate as to whether Plaintiff's injury would have been avoided, even if the mower had state-of-the-art brakes by 1985 standards. For that matter, a jury must speculate as to whether Plaintiff's injury would have been avoided, even if the mower had state-of-the-art brakes by 2002 standards.

The only "evidence" Plaintiff can present regarding causation in fact is speculation that a properly functioning shifting mechanism might have averted the accident. Such speculation is insufficient to preclude summary judgment. Stanley v. City of Independence, 995 S.W.2d 485, 488 (Mo. 1999) (affirming summary judgment for defendant where causation depended on "pure speculation and conjecture."); D.S. Sifers Corp. v. Hallak, 46 S.W.3d 11, 20 (Mo. App. 2001) (affirming summary judgment for defendant after holding that "[s]peculation as to the tortious conduct of [defendant] cannot be the basis for imposing liability" on plaintiff's negligence claim.); Godfrey, 276 F.3d at 412 (holding that plaintiff cannot avoid summary judgment through speculation). Because Plaintiff cannot establish causation in fact without resort to speculation, CPB is entitled to summary judgment on his "direct negligence" claim.

### b. Plaintiff Cannot Establish Proximate Cause

In addition to causation in fact, a plaintiff must show that the defendant's conduct was the proximate cause of the injuries.

> Proximate cause is not causation in fact, but is a limitation the law imposes on the right to recover for the consequences of a negligent act. The requirement of proving proximate cause absolves those actors whom it would be unfair to punish because of the attenuated relation which their conduct bears to plaintiff's injuries. Thus, proximate cause requires something in addition to a "but for" causation test because the "but for" causation test serves only to exclude items that are not causal in fact; proximate cause will

[exclude]⁷ "items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage."

The test of proximate cause is whether the defendant's negligence is that cause or act of which the injury was the natural and probable consequence. Proximate cause, therefore, is determined by looking back, after the occurrence, and examining whether the injury appears to be a reasonable and probable consequence of the conduct.

Heffernan, 73 S.W.3d at 664 (internal citations omitted).

In the present case, even if Plaintiff could establish causation in fact, CPB's alleged conduct is so far removed from the ultimate injury that it would be unreasonable to base liability on that conduct. The only conduct Plaintiff asserts as a basis for CPB's direct negligence is CPB's alleged failure to repair a mower which Ken Riordan claimed was "hard to shift." The critical question is whether Plaintiff's injury was the "natural and probable consequence" of CPB's alleged failure to repair the mower's shifting mechanism? As a matter of law, the answer is "no."

It was not reasonably foreseeable that Ken Riordan would: (1) choose to operate a mower which he believed to be unsafe; (2) choose to do so on a day when he allowed his five-year-old son to play around the mower unsupervised, and (3) choose to continue mowing even after initially scolding his son for coming too close to the mower. In short, it is not reasonably foreseeable that Ken Riordan would act in such a negligent manner. "It is not negligence to fail to anticipate that another will be negligent for one is entitled to assume and act upon the assumption that others will exercise due care." Buck v. Union Elec. Co., 887 S.W.2d 430, 434-35 (Mo. Ct. App. 1994). As stated in Heffernan:

[I]f two or more persons are guilty of consecutive acts of negligence there is a question as to whether the initial act of negligence was a proximate cause of the injury or whether there

---

⁷ Although the word appearing in the Heffernan decision is "include," this is clearly a typographical or other error, given the language of Robinson v. Missouri State Highway and Transp. Com'n, 24 S.W.3d 67, 77 (Mo. Ct. Ap. 2000), which is quoted in Heffernan.

was an efficient, intervening cause. An efficient, intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury, but it may not consist of merely an act of concurring or contributing negligence. Whether proximate cause exists is usually a jury question; however, a court properly interposes its judgment in this determination when the evidence reveals the existence of an intervening cause that eclipses the role the defendant's conduct played in the plaintiff's injury.

Heffernan, 73 S.W.3d at 665 (internal citations omitted). The Heffernan decision is instructive.

In Heffernan, a broken sewer pipe caused flooding in a subdivision where three men lived. Id. at 662. The three men used heavy equipment to dig a trench to uncover the broken pipe, but did not shore the walls of the trench. The walls of the trench caved in while the men worked on the pipe. Ray Heffernan and another man were killed, and the third man was injured. Heffernan's heirs filed a wrongful death suit against the contractor, Reinhold, who installed the subdivision sewer lines. The trial court granted the contractor's motion for summary judgment. Id. at 663.

On appeal, the Missouri Court of Appeals affirmed the trial court's grant of summary judgment:

Here, the undisputed evidence shows that while Reinhold originally installed the damaged pipe, Plaintiffs cannot prove proximate cause to establish negligence. Based upon our review of the summary judgment record, we cannot conclude it reasonably foreseeable that three neighbors would undertake such a project without the proper safeguards needed to complete the job safely. The record shows that the excavation could have been done safely as conceded by Plaintiff's own expert, Dr. Mario Gomez. After noting the potential reasons for the collapse, Dr. Gomez stated, however, that the excavation could have been done safely if the trench had been properly sloped or properly shored regardless of the nature of the soil conditions. "It is not negligence to fail to anticipate that another will be negligent for one is entitled to assume and act upon the assumption that others will exercise due care for their own safety, in the absence of notice to the contrary." Buck v. Union Elec. Co., 887 S.W.2d 430, 434-35 (Mo. Ct. App. 1994). Here, Ray Heffernan failed to exercise due care for his own safety. Heffernan's conduct was a sufficient intervening cause.

Plaintiffs could not establish the causation element needed to succeed on their claims. The undisputed facts establish that Ray Heffernan's death was not a reasonable and probable consequence of Reinhold's conduct of installing the sewer pipe or Reinhold's failure to warn. Therefore, the trial court did not err in granting summary judgment to Reinhold.

Id. at 665.

In the instant case, Ken Riordan's actions in utilizing what he deemed to be an unsafe mower, mowing the lawn while letting his unsupervised five-year-old son play nearby, and continuing his mowing after scolding his son for coming too close to the mower constitute an efficient, intervening cause. Ken Riordan's actions constitute a "new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury." Accordingly, Plaintiff cannot establish proximate cause. For this additional reason, CPB is entitled to summary judgment on Plaintiff's "direct negligence" claim.

## V.        Conclusion

Ken Riordan's unfortunate decisions on April 13, 1985, are the roots of this litigation. No matter what labels Plaintiff attaches to his claims, they still sprout from Ken Riordan's decisions. The controlling law and facts do not permit Plaintiff to circumvent Ken Riordan's decisions, and Plaintiff's claims cannot survive summary judgment. CPB respectfully requests that the Court grant its motion, and dismiss this case in its entirety.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was served on November 27, 2002, via U.S. Mail, postage prepaid, to:

Victor A. Bergman
Shamberg, Johnson & Bergman, Chtd.
2600 Grand Boulevard, Suite 550
Kansas City, MO  64108

ATTORNEYS FOR PLAINTIFF


/s/   Joseph H. Knittig_____